IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ERIC MITCHELL, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 2:15-cv-00149-TMP |
| ) | |
| ARCHER DANIEL MIDLAND ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Before the court is a partial motion to dismiss filed by defendant Archer Daniel Midland Company ("ADM"). (Doc. 10). The motion has been fully briefed. The parties have consented to the exercise of dispositive jurisdiction by the undersigned.

## BACKGROUND

Eric and Rita Mitchell (together "Plaintiffs") filed a complaint against ADM in this court on January 26, 2015. The complaint asserts claims on behalf of plaintiff Eric Mitchell pursuant to Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991 (42 U.S.C. 2000e *et seq*.) and the Civil

Rights Act of 1866 as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981 and § 1981a.  The complaint also asserts claims on behalf of plaintiff Rita Mitchell for third party breach of contract pursuant to 42 U.S.C. § 1981.[1]  On March 31, 2015, ADM filed a partial motion to dismiss the complaint supported by a brief.[2]  (Docs. 10, 11).  ADM moves to dismiss with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, all claims asserted by Rita Mitchell because, ADM alleges, she has never been employed by ADM and, therefore, lacks standing to bring a claim under 42 U.S.C. § 1981.

## STANDARD OF REVIEW

On a motion to dismiss a pleading seeking relief, the court must analyze the pleading pursuant to the pleading standards set forth in Rule 8(a) of the Federal Rules of Civil Procedure, as construed by the Supreme Court of the United States in <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 554, 127 S. Ct. 1955, 167 L.

---

[1]  The first paragraph of the Complaint states that Eric Mitchell "asserts race discrimination claims under the Americans with Disabilities Act. . ." (Doc. 1, ¶ 1).  However, the ADA is not referenced anywhere else in the complaint.  Archer Daniel Midland moves to dismiss any claims pursuant to the ADA as unsupported by any factual allegations.  In the response to the motion to dismiss, the plaintiffs clarify that no claims are brought pursuant to the ADA, and the reference to the ADA in the first paragraph of the Complaint was a mistake.  (Doc. 19, p. 2).  To the extent that Archer Daniel Midland moves to dismiss plaintiffs' claims pursuant to the Americans with Disabilities Act, the Motion is due to be and hereby is GRANTED.  (Doc. 10).

[2]  The defendant moved to "dismiss Plaintiffs' Complaint for lack of standing and failure to state a claim upon which relief can be granted."  (Doc. 10).  However, the defendant's brief only addresses the claims of plaintiff Rita Mae Mitchell and the plaintiff Eric Mitchell's ADA claims.  Accordingly, the motion to dismiss will be treated as a partial motion to dismiss.

Ed. 2d 929 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  These standards replace and enhance those outlined in Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), which allowed a claim to survive a motion to dismiss unless it could be shown "beyond doubt that the Plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  Id. at 45-46.  According to Twombly, Conley has been put out to "retirement," Twombly at 563, or "interred," id. at 577 (Stevens, J., dissenting).

The Supreme Court commented in 2007 on Rule 12(b)(6) dismissals, saying:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.*; *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216 pp. 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), . . .

3

> . . .
>
> The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) [the alleged claims] reflect the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief."

Bell Atlantic Corp. v. Twombly, 550 U.S. 544-70, 127 S. Ct. 1955, 1964-74, 167 L. Ed. 2d 929 (2007) (internal footnotes omitted).  In Twombly, the Supreme Court clearly raised the threshold for factual allegations in a complaint from "conceivable" to "plausible."  Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010); Rivell v. Private Health Care Systems, Inc., 520 F.3d 1308, 1309 (11th Cir. 2008); Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009); Financial Securities Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282 (11th Cir. 2007)).  Mere legal conclusions are insufficient substitutes for factual allegations.

Two years after the Twombly decision, the Supreme Court discussed pleading requirements in Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009):

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  *Id*., at 555, 127 S. Ct. 1955 (Although for

> the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556, 127 S. Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 678-79, 129 S. Ct. at 1949-50. The Eleventh Circuit Court of Appeals has applied Iqbal, noting that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Speaker v. Dept. of Health and Human Services, 623 F.3d 1371, 1380 (11th Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

The court of appeals has taken the Supreme Court's admonition to heart. "The Supreme Court's most recent formulation of the pleading-specificity standard is that 'stating such a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." <u>Watts v. Florida Int'l Univ.</u>, 495 F.3d 1289, 1295 (11th Cir. 2007), quoting <u>Twombly</u>, 127 S. Ct. at 1965.  The rule does not "impose a probability requirement at the pleading stage;" instead the standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the elements of the claims. <u>Twombly</u>, 127 S. Ct. at 1965.  "It is sufficient if the complaint succeeds in 'identifying facts that are suggestive enough to render [the element] plausible.'" <u>Watts</u>, 495 F.3d at 1296, quoting <u>Twombly</u>, 127 S. Ct. at 1965.

## DISCUSSION

In the complaint, plaintiff Rita Mitchell ("Rita") asserts that she was damaged by the discriminatory termination of her husband's, plaintiff Eric Mitchell's ("Eric"), employment.  While Eric was employed with ADM, Rita was diagnosed with breast cancer, and she was undergoing treatment at the time of his termination.  As a result of Eric's termination, Rita lost her health insurance coverage and was forced to postpone her cancer treatments until she could obtain new insurance.  Rita asserts that she was an intended third-party beneficiary of

Eric's employment with ADM and, therefore, has a valid cause of action under 42 U.S.C. § 1981. Rita contends that, as a third-party intended beneficiary of Eric's employment, she received financial security, health insurance, and other benefits as a direct result of Eric's employment with ADM.

Section 1981 provides, in pertinent part:

> **(a) Statement of equal rights**
>
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> **(b) defined**
>
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981.

In <u>Domino's Pizza, Inc. v. McDonald</u>, the Supreme Court of the United States made clear that "a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to

make and enforce.' Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's." 546 U.S. 470, 479-480, 126 S. Ct. 1246, 1252 (2006). In McDonald, the sole shareholder and president of a corporation sued Domino's for alleged violations of § 1981. The plaintiff had entered into several contracts with Domino's on behalf of the corporation and Domino's refused to fully honor the contracts. The Court determined that, even as the president and sole shareholder in the corporation, because the plaintiff was not a party to the contract, he personally did not have standing to sue under § 1981. "Absent the requirement that the plaintiff himself must have rights under the contractual relationship, § 1981 would become a strange remedial provision designed to fight racial animus in all of its noxious forms, but only if the animus and the hurt it produces were connected to *somebody's* contract. We have never read the statute in this unbounded—or, rather, *peculiarly* bounded—way." Id. at 476 (emphasis in original) (internal citations omitted).

Despite her protestations to the alternative, Rita's claims under § 1981 are even more attenuated than the plaintiff's in McDonald. The complaint makes clear that the employment "contract" existed between ADM and Eric, not Rita. There is no allegation of any direct contractual relationship between ADM and Rita. The simple fact that someone receives a benefit under a contract does not provide them

with rights to the enforcement of the contract.  Although Rita gained several benefits from her husband's employment, she did not have rights under Eric's employment agreement that she is entitled to enforce herself.  Accordingly, Rita is not a proper plaintiff under § 1981.

Rita also argues, however, that she was the intended third-party beneficiary of her husband's employment agreement and, as such, had enforcement rights under the contract and a proper § 1981 claim.  The complaint asserts that "Mr. Mitchell accepted [ADM's] employment proposal based on representations that health, wellness and the employee's family mattered to [ADM.]  [ADM] employee families are intended beneficiaries of a generous benefits package arising out of the employment relationship."  (Doc. 1, ¶ 2).  To support this argument, Rita cites footnote three of McDonald, which states that "[w]e say 'under which the plaintiff has rights' rather than 'to which the plaintiff is a party' because we do not mean to exclude the possibility that a third-party intended beneficiary of a contract may have rights under § 1981 . . . . Neither do we affirm that possibility."  546 U.S. at 476.  Rita contends that, because the Court left open the possibility that a third-party intended beneficiary may have rights under § 1981, her status as the spouse of the contracting party establishes her as an intended third-party beneficiary.  However, once again, the fact that Rita received benefits from her husband's employment does not mean that she was the legally *intended* beneficiary.

The Supreme Court of Alabama has made clear that "[a] party claiming to be a third party beneficiary 'must establish that the contracting parties intended, upon execution of the contract, to bestow a *direct*, as opposed to an *incidental*, benefit upon the third party.'"[3] Cincinnati Ins. Co. v. Barber Insulation, Inc., 946 So.2d 441, 443 (Ala. 2006), quoting Ex parte Stamey, 776 So.2d 85, 92 (Ala. 2000), quoting in turn Weathers Auto Glass, Inc. v. Alfa Mut. Ins. Co., 619 So.2d 1328, 1329 (Ala. 1993) (emphasis in the original).  There is no question that Rita received a benefit from her husband's employment – she received several benefits such as income, health insurance, and even peace of mind.  However, the argument that her husband's employment contract was intended to bestow a *direct* benefit on Rita is tenuous at best.  The case of Slovensky v. Birmingham News Co., 358 So. 2d 474 (Ala. Civ. App. 1978), confirms this conclusion.  In that case, the wife of an employee of the defendant sought to sue the defendant employer for the wrongful discharge of her husband, claiming to be a third-party beneficiary of the employment contract.  The Alabama Court of Civil Appeals rejected the argument, holding that the wife was only an incident beneficiary of the employment contract. Id. at 476.  "The record reveals that the employment contract concerned only the

---

[3]   The parties do not dispute that whatever contracts or agreements are at issue in this action arose under and are governed by Alabama state law.  "The question of whether, for standing purposes, a non-party to a contract has a legally enforceable right therein is a matter of state law."  Bochese v. Town of Ponce Inlet, 405 F.3d 964, 981 (11th Cir. 2005), citing Miree v. DeKalb County, 433 U.S. 25, 29–33, 97 S. Ct. 2490, 53 L. Ed. 2d 557 (1977).

husband, defendant, and the husband's union.  The plaintiff was not involved in the contract and was not intended to be a direct beneficiary of such contract."

In the instant case, there was no argument that the benefits package included in Eric's employment was specifically intended to benefit Rita.  As is common in many employment agreements, Eric was provided with the extra benefit of medical insurance coverage for himself and his immediate family.  This was intended by the parties to compensate Eric for his employment labors, even though his family members incidentally benefitted as well.  The employment agreement between ADM and Eric, whatever its terms and provisions, was negotiated and intended to confer a *direct* benefit on Rita.  For this reason, Rita does not meet the requirements of the third-party beneficiary doctrine and, therefore, she has no standing to sue on the employment agreement between her husband and ADM.

## CONCLUSION

For all of the reasons stated above, the Partial Motion to Dismiss filed by defendant Archer Daniel Midland Company (doc. 10) is due to be and hereby is GRANTED.  Any claims asserted pursuant to the Americans with Disabilities Act are due to be DISMISSED WITH PREJUDICE, and plaintiff Rita Mae Mitchell's claims pursuant to § 1981 are due to be DISMISSED WITH PREJUDICE.  All

other claims stated in the Complaint remain pending.  A separate order will be filed contemporaneously herewith.

DATED this 13th day of July, 2015.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE